UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTINE ALINGTON,

                                              Plaintiff,

                                              DECISION AND ORDER

                                              15-CV-6247L

                                              v.

CAROLYN W. COLVIN,

                                              Defendant.
_____

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

On July 12, 2012, plaintiff filed applications for a period of disability and disability insurance benefits under Title II of the Social Security Act, and supplemental security income under Title XVI. Plaintiff alleged an inability to work since May 14, 2011. (Tr. 22).[1] Her applications were initially denied. Plaintiff requested a hearing, which was held November 4, 2013 via videoconference before Administrative Law Judge ("ALJ") John P. Ramos. The ALJ issued an unfavorable decision on February 4, 2014, concluding that plaintiff was not disabled under the Social Security Act. That decision became the final decision of the Commissioner when the Appeals Council denied review on April 20, 2015. (Tr. 1-3). Plaintiff now appeals.

---

[1] "Tr." refers to the numbered pages of the administrative transcript.

The plaintiff has moved to remand the matter, and the Commissioner has cross moved for judgment on the pleadings, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below, plaintiff's motion for remand (Dkt. #14) is granted, and the Commissioner's cross motion (Dkt. #15) is denied.

**DISCUSSION**

I. The ALJ's Evaluation

An ALJ proceeds though a five-step evaluation in determining whether a claimant is disabled within the meaning of the Social Security Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. See 20 CFR §404.1520(b). If so, the claimant is not disabled. If not, then the ALJ continues to step two, and determines whether the claimant has an impairment or combination of impairments that is "severe," e.g., that imposes significant restrictions on the claimant's ability to perform basic work activities. 20 CFR §404.1520(c). If not, the analysis concludes with a finding of "not disabled." If so, the ALJ proceeds to step three.

At step three, the ALJ examines whether the claimant's impairment meets or equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4. If the impairment meets or medically equals the criteria of a listing and meets the durational requirement (20 CFR §404.1509), the claimant is disabled. If not, the ALJ's analysis proceeds to step four, and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 CFR §404.1520(e), (f).

The ALJ then turns to whether the claimant's RFC permits performance of the requirements of the claimant's past relevant work. If so, the claimant is not disabled. If not, analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986)). *See* 20 CFR §404.1560(c).

The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (*quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997)). Nonetheless, "it is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

The same level of deference is not owed to the Commissioner's conclusions of law. *See Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984). This Court must independently determine

if the Commissioner's decision applied the correct legal standards in determining that the plaintiff was not disabled. "Failure to apply the correct legal standards is grounds for reversal." *Id.*, 748 F.2d at 112. Therefore, this Court first examines the legal standards applied, and then, if the standards were correctly applied, considers the substantiality of the evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir.1987). *See also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir.1998).

Here, the ALJ determined that the plaintiff had severe impairments consisting of degenerative disc disease of the lumbar and cervical spine, degenerative joint disease of the left shoulder, adjustment disorder with depression and anxiety, cognitive disorder, and substance abuse disorder. He found that plaintiff was capable of performing sedentary work, with the following limitations: no more than occasional performance of postural activities such as kneeling, squatting, crouching, and crawling; avoidance of walking on uneven terrain and up inclines, ramps and stairs; avoidance of overhead reaching with both arms, but able to grasp, hold, turn, raise and lower objects with either hand; ability to perform fine manipulation, to understand and follow simple instructions, perform simple tasks with supervision and/or independently, ability to maintain attention and concentration for simple tasks, ability to attend to a routine and maintain a schedule, relate and interact with others to carry out simple tasks, and handle reasonable levels of simple work-related stress. (Tr. 27-28). Because the ALJ found that plaintiff's limitations did not significantly erode her ability to perform a full range of sedentary work, he applied the Medical-Vocational Guidelines to find plaintiff "not disabled."

## II. Applicability of Listing 1.04

Plaintiff first argues that the ALJ should have found, at step 3, that her impairments met the requirements of a listed impairment – specifically, Listing 1.04, titled Disorders of the Spine. 20 C.F.R. Subpt. P, Pt. 404, App. 1 at 1.04.

As relevant here, Listing 1.04 includes:

spinal stenosis [or] degenerative disc disease . . . resulting in compromise of a nerve root . . . or the spinal cord [w]ith: evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion in the spine, motor loss [that is] accompanies by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

Plaintiff argues that she suffered from each of the listed symptoms at least once during the relevant period, and that she suffered from nerve root compression for at least twelve months. Although plaintiff concedes that none of the necessary symptoms appeared consistently (for example, some of her straight-raising tests were positive and others negative), she argues that it is only necessary to show that each element of Listing 1.04 was found on at least one occasion during the relevant period in order to demonstrate that she meets the requirements of the listing (or at least, to raise a question of fact as to whether the ALJ overlooked pertinent evidence). *See Nelson v. Colvin*, 114 F. Supp. 3d 69, 75 (W.D.N.Y. 2015) (where a claimant appears to meet at least some of the requirements of a listed impairment, the ALJ is obligated to explain his reasons for finding that the listing is not met).

The Court disagrees. In order to "qualify for listing severity, the claimant must show that [s]he meets all the requirements of the listing consistently." *Beach v. Commissioner*, 2014 U.S. Dist. LEXIS 28283 at *9-*10 (N.D.N.Y. 2014) (citing *Evans v. Astrue*, 2012 U.S. Dist. LEXIS 176211 at *8 (W.D.N.Y. 2012)). Sporadic findings that some of a listing's requirements are

5

intermittently met (but never all) are not sufficient, and the record is clear that plaintiff did not meet *all* of the elements of the listing, contemporaneously, at any point. Nor is this a case in which there is some danger that the ALJ might have overlooked the relevant evidence of record: the ALJ expressly examined the elements of Listing 1.04, cited to the relevant exhibits in the record, and found plaintiff's demonstrations of sensory loss, motor weakness, reflex abnormalities and positive straight leg raising tests to be too fleeting and inconsistent to satisfy the listing. (Tr. 27). Accordingly, I find the ALJ's determination that plaintiff's impairments do not meet the requirements of Listing 1.04 was supported by substantial evidence, and that determination is affirmed.

**III.    The ALJ's Rejection of Plaintiff's Treating Physician's Opinion**

Plaintiff also contends that the ALJ failed to sufficiently support his decision not to give controlling weight to the opinion of her primary care provider, internist Dr. Sam Thompson.

A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings, and is not inconsistent with other substantial evidence. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). If an ALJ opts not to afford controlling weight to the opinion of a treating physician, the ALJ must consider: (1) the examining relationship; (2) the extent of the treatment relationship; (3) medical support for the opinion: (4) consistency; and (5) the physician's specialization, along with any other relevant factors. 29 C.F.R. §404.1527(d)(2). An ALJ's failure to apply these factors and provide reasons for the weight given to the treating physician's report is reversible error. *See Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

I find that the ALJ appropriately considered the relevant factors in assessing Dr. Thompson's assessments. In two virtually identical opinions dated November 9, 2011 and May [illegible], 2012, Dr. Thompson opined that plaintiff's back pain and cervical disc herniation at

C4-C5 caused her to be "very limited" in the ability to stand, sit, lift and carry, push, pull and bend, and climb stairs, and "moderately limited" in her ability to walk. (Tr. 334-37). As a result, he opined that plaintiff "cannot do any work as sitting/standing and walking is very difficult and she would need breaks every 10-20 min[ute]s," and "can do no useful work." (Tr. 335, 337).

Initially, to the extent that Dr. Thompson's reports stray into legal conclusions concerning whether plaintiff is disabled, the ALJ properly disregarded them, as "[t]he ultimate determination of whether a person has a disability within the meaning of the Act belongs to the Commissioner." *Greek v. Colvin*, 802 F.3d 370, 374 (2d Cir. 2015). Furthermore, although Dr. Thompson was plaintiff's personal care physician beginning July 28, 2011 (Tr. 423), his opinions were rendered just four months and nine months after he began treating plaintiff. His opinions describe restrictions on sitting, standing and walking that are unsupported by any examination findings or other objective medical evidence such as imaging studies, and which conflict with Dr. Thompson's treatment notes and other evidence concerning plaintiff's self-reported daily activities. *See e.g.*, Tr. 408, 411, 414, 420 (2011-2012 treatment notes indicating limitations in range of spinal motion but typically normal muscle strength, and noting that plaintiff "enjoys work on cars" and that her "[p]rimary form of exercise is walking"); Tr. 396 (plaintiff reports to independent examiner on September 6, 2012 that her daily activities include cooking, cleaning, laundry, shopping and child care); Tr. 62, 64 (plaintiff's hearing testimony that she cooks, grocery shops, and cares for her two-year-old granddaughter, of whom she has legal custody).

Because Dr. Thompson's opinions concerning plaintiff's functional limitations conflict with the bulk of the medical record and are unsupported by any objective testing, I find that the

ALJ's decision not to grant controlling weight to the opinions of Dr. Thompson was adequately supported.

IV. The ALJ's Application of the Medical-Vocational Guidelines (the "Grids")

If a claimant has nonexertional limitations that significantly limit her ability to perform the full range of work permitted by her exertional limitations – here, sedentary work – the ALJ is required to obtain testimony from a vocational expert to determine whether jobs exist in the economy that plaintiff can obtain and perform. Plaintiff argues that the ALJ erred in applying the Grids to find her "not disabled," rather than hearing testimony from a vocational expert, because the RFC determined by the ALJ represented a significant erosion of the occupational base for sedentary work.

Plaintiff's nonexertional limitations include the need to "avoid" reaching overhead with either hand. (Tr. 28). Here, although the ALJ specifically discussed the effect of plaintiff's other limitations on her ability to perform a range of sedentary work (e.g., occasional stooping), he failed to discuss plaintiff's reaching limitations or to explain his implicit finding that they would have no more than a minimal impact on the occupational base of unskilled sedentary work. (Tr. 32).

Courts analyzing bilateral reaching limitations have typically found that a significant limitation on overhead reaching with both hands, particularly in the context of sedentary jobs, "may eliminate a large number of occupations a person could otherwise do," and have opined that where a claimant has such limitations, the use of a vocational expert is required at step five in order for the Commissioner to meet her burden of proof. *Colette v. Commissioner*, 2016 U.S. Dist. LEXIS 132876 at *16 (N.D.N.Y. 2016) (quoting SSR 85-15, 1985 SSR LEXIS 20 at *19 (1985)). *See also Montoya v. Colvin*, 649 Fed. Appx. 429, 431 (9th Cir. 2016) (limitation to

occasional overhead reaching precludes reliance on the Grids); *Selian v. Astrue*, 708 F.3d 409, 422 (2d Cir. 2013) (reaching limitation in both arms may significantly erode occupational base); *Moore v. Astrue*, 2013 U.S. Dist. LEXIS 52183 at *35 (N.D.N.Y. 2013) (prohibition against overhead reaching is a severe nonexertional impairment which precludes reliance on the Grids and requires testimony by a vocational expert).

Failure of obtain testimony from a vocational expert, in circumstances where it is required, is reversible error, and remand is appropriate where there are gaps in the record or further development of the evidence is needed. *See Curry v. Apfel,* 209 F.3d 117, 124 (2d Cir. 2000).

## CONCLUSION

For the foregoing reasons, plaintiff's motion to remand this matter (Dkt. #14) is granted, the Commissioner's cross motion for judgment on the pleadings (Dkt. #15) is denied, and the matter is remanded for further proceedings. During the course of the remand, testimony from a vocational expert should be obtained to determine whether plaintiff's RFC permits her to find, obtain and perform work existing in significant numbers in the national economy.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
April 17, 2017.